UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

CESAR MATEO,

                          Plaintiff,

          -against-

BRIAN FISCHER, KEITH SCHMITT, and
MICHAEL MILLER,

                          Defendants.

------------------------------------------------

08 Civ. 7779 (RJH) (DCF)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

        This is one of several actions Cesar Mateo ("Mateo"), a prisoner currently

incarcerated at the Great Meadow Correctional Facility ("Great Meadow"), has brought

*pro se* against various prison officials under 41 U.S.C. § 1983 ("Section 1983").  Here,

Mateo is suing Brian Fischer[1] ("Fischer"), the New York State Commissioner of the

Department of Correctional Facilities ("DOCS"), and two prison officers at the Green

Haven Correctional Facility ("Green Haven"), where Mateo was incarcerated prior to

Great Meadow.  Mateo's amended complaint alleges that these defendants harassed and

retaliated against him for filing grievances in 2007 and 2008.  Defendants have moved to

dismiss the complaint in its entirety.  For the reasons that follow, the Court grants in part

and denies in part defendants' motion.

---

[1] The Court will spell defendants' and other prison officials' names as defendants do, rather than as
plaintiff lists them.  (*See* Defs.' Mem. 1.)

1

**BACKGROUND**

Mateo first filed this lawsuit in the Northern District of New York, on July 15, 2008, and only against Fischer.  (*Mateo v. Ficsher*, No. 08-0777 (N.D.N.Y. filed July 15, 2008), Compl. ("First Compl.") 1, 8.)  He alleged that, while he was incarcerated at Green Haven from 2003 to 2008, various prison officials—none named as defendants— harassed, threatened, and retaliated against him for filing grievances.  (*See generally* First Compl.)  Mateo further alleged that he wrote letters to Fischer about the harassment and asked Fischer "to place[] [him] in isolation status with privileges," and that these letters were ignored.  (*Id.* ¶ 29.)  Judge Hurd *sua sponte* dismissed Mateo's complaint for various deficiencies, including failure to adequately plead Fischer's personal involvement, and he granted Mateo leave to amend.  (*Mateo v. Ficsher*, No. 08-0777 (N.D.N.Y. filed July 15, 2008), Order dated July 28, 2008, at 4–6.)  On August 8, 2008, Mateo filed an amended complaint based solely on events at Green Haven; the complaint added two defendants, Lieutenant Keith Schmitt ("Schmitt") and Correction Officer Michael Miller ("Miller").  Because Green Haven is in this district, the case was transferred here.  (*Mateo v. Ficsher*, No. 08-0777 (N.D.N.Y. filed July 15, 2008), Dkt. 5– 6.)

In the amended complaint, Mateo's allegations center on grievances he filed and actions prison officials took or failed to take in response thereto.  His first grievance stemmed from an incident in March 2007 when relatives came to visit him at Green Haven and unnamed prison officers "intentionally delayed" his arrival at the visiting room by more than two hours.  (Am. Compl. ¶ 9.)  When Mateo complained to a corrections officer about his family's long wait for him, he was ignored.  (*Id.*)  He filled

out a grievance form about the incident and placed it in a prison grievance box, but

Mateo says the grievance "was not process[ed]."  (*Id.*)  Mateo sent a letter about the

incident to Fischer, attaching a copy of his original grievance; later, he wrote Fischer a

second letter detailing "experiences of harassment, retaliation and threats by correction

officers" and requested that he be confined permanently to his cell.  (*Id.* ¶¶ 10–11.)

Fischer forwarded the complaint to other officials for investigation, and as part of that

investigation defendant Schmitt interviewed Mateo about his allegations.  (*Id.* ¶ 12.)

Exactly what kinds of harassment, retaliation, or threats Mateo had experienced

prior to the interview, the complaint does not say.  Whatever they were, Schmitt doubted

that Mateo could prove them, and—in a retaliatory measure, the complaint says—he

referred Mateo to the New York Office of Mental Health ("OMH") for a mental health

evaluation.  (*Id.* ¶ 12.)  Other unnamed staff also evidently referred Mateo for an

evaluation.  (*Id.* ¶ 18.)  The evaluation that followed was, Mateo says, fabricated in

retaliation for his complaints; it diagnosed him as paranoid.  (*Id.* ¶¶ 14, 17.)  According to

the complaint, the diagnosis was discrediting to the plaintiff and led to discrimination

against him by both prison guards and other prisoners.  (*Id.* ¶ 17.)  For the most part, the

complaint leaves this discrimination undefined.  It does describe a few incidents—two

with defendant Miller and a few with various prison officers not named as defendants in

the complaint.

For example, an Officer Perez called Mateo paranoid (*id.* ¶ 22), and an Officer

Erns searched Mateo's property and confiscated some of it, then forced Mateo to wait for

a long period of time to use a toilet (*id.* ¶ 25).  Another incident occurred in November of

2007, after Mateo filed a sexual harassment grievance against defendant Miller.  (*Id.* ¶

20.)  Though the complaint does not say why Mateo filed that grievance, it says that

prison officers, including Miller, came to his cell the next day to retaliate.  (*Id.*)  The

complaint alleges no physical contact during this incident—just that Miller "threatened"

the plaintiff and told him to "wait till he put his hands on [Mateo]," and that Miller filed a

false misbehavior report about him.  (*Id.*)  The same day, Mateo sent a letter to the

"Assistant Commissioner and Inspector General" regarding the Miller incident.  (*Id.*)

The letter was "not processed and never returned."  (*Id.*)

In December of 2007, Mateo refused to receive visitors because he feared they

might suffer retaliation by prison officers.  (*Id.* ¶ 21.)  The same month, Mateo sent

Fischer yet another letter of complaint; defendant Schmitt again interviewed him; and

again prison officials denied his allegations as unfounded.  (*Id.*)

In March of 2008, Mateo had another encounter with Miller.  Miller entered his

cell, held his fist to Mateo's face, and threatened him.  (*Id.* ¶ 23.)  Mateo took this to be

another act of retaliation for complaining to the facility superintendent about Miller.  (*Id.*)

In a letter to Fischer, Mateo reported the incident, but Miller has continued to harass

Mateo in unspecified ways.  (*Id.*)

Mateo has repeatedly requested that Fischer place him "on isolation status" but

those requests have all been ignored.  (*Id.* ¶¶ 24, 29.)  Mateo is now suing to force

Fischer to turn over all documents relating to him and to place him "on permanent

isolation status immediately with privileges"; he also seeks damages of at least $500,000

against the defendants.  (*Id.* 8.)

4

## DISCUSSION

### I.      Standard of Review

On a motion to dismiss, the Court accepts the complaint's allegations as true and

draws all reasonable inferences in the plaintiff's favor.  *In re DDAVP Direct Purchaser*

*Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009).  To survive dismissal for failure to

state a claim, a complaint must simply "give the defendants fair notice of what the . . .

claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quotation marks and citation omitted); Fed. R. Civ. P. 8(a)(2)).  Especially

"when the plaintiff proceeds pro se, as in this case, a court is obliged to construe his

pleadings liberally, particularly when they allege civil rights violations."  *McEachin v.*

*McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  Still, the complaint's allegations "must be

enough to raise a right of relief above the speculative level."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007).  Only a "plausible claim for relief survives a motion to

dismiss."  *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir.

2009).  Thus courts are "not bound to accept as true a legal conclusion couched as a

factual allegation," and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949–50 (2009) (internal quotation marks omitted).


### II.     Relief Requested

Mateo has asked for injunctive relief and monetary damages against all three

defendants.  His complaint does not say whether he seeks damages against defendants in

their official or individual capacities; the Court will assume he seeks damages as to both.

The defendants, however, may not be sued for damages in their official capacities.  The

Eleventh Amendment bars lawsuits by a citizen of a state against that state or its

agencies, absent the state's consent or a statutory waiver of immunity. *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). And it is well settled that

Congress did not intend to abrogate sovereign immunity when it enacted Section 1983.

*See Quern v. Jordan*, 440 U.S. 332, 343–44 (1979). Thus, to the extent Mateo is suing

the defendants for damages in their official capacities, his claims are barred. *See Davis v.*

*New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims

for damages against state officials in their official capacities on Eleventh Amendment

grounds). The Court will therefore construe Mateo's damages claims as claims against

the defendants in their individual or personal capacities, which are not barred by the

Eleventh Amendment. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988).

　　　With regard to injunctive relief, Mateo cannot sue Schmitt and Miller for an

injunction to place him in protective custody or isolation, because Mateo is no longer

incarcerated in their prison. An inmate's transfer out of a facility moots any claims he

has for injunctive relief against officials of that facility. *See Salahuddin v. Goord*, 467

F.3d 263, 272 (2d Cir. 2006). Furthermore, Mateo cannot sue Fischer for an injunction to

place him in protective custody. As Judge Hurd said in dismissing this part of Mateo's

original complaint pursuant to Rule 12(b)(6), "[t]he law is clear that an inmate does not

have a right to be confined to the prison of his own choosing." (*Mateo v. Ficsher*, No.

08-0777 (N.D.N.Y. filed July 15, 2008), Order dated July 28, 2008, at 4 (citing *Olim v.*

*Wakinekona*, 461 U.S. 238, 245 (1983).) Of course, this does not preclude Mateo from

seeking damages from Fischer for failing to remedy unconstitutional conditions of

confinement—just from seeking an injunction forcing Fischer to place him in a certain kind of confinement.

### III.     Fischer's Personal Involvement

Fischer argues that all claims against him should be dismissed because he had no personal involvement in any alleged violation of Mateo's rights.  A defendant's personal involvement in a constitutional violation is a "prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  A plaintiff may establish a prison supervisor's personal involvement by showing that he:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Wingate v. Gives*, No. 05-1872, 2008 WL 5649089, at *13 (S.D.N.Y. Apr. 13, 2008) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  At issue here is the second of the *Colon* prongs—whether Fischer failed to remedy constitutional violations after Mateo apprised him of them in several letters.

Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS Commissioner had no personal involvement when plaintiff wrote him two letters, one an appeal the Commissioner had referred to the prison superintendent for decision); *Higgins v. Artuz*, No. 94-4810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, D.J.) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is

insufficient to hold that official liable for the alleged violations" (quotation marks and

citation omitted)); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The

law is clear that allegations that an official ignored a prisoner's letter are insufficient to

establish liability.").  Nor is it enough that a supervisor forwarded a complaint or

grievance to another official for handling.  *See Sealey*, 116 F.3d at 51; *Ramos v. Artuz*,

No. 00-0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001) (superintendent lacked

personal involvement where he forwarded inmate's complaint letters to appropriate

subordinates and advised plaintiff of his actions); *but see Manley v. Mazzuca*, No. 01-

5178, 2004 WL 253314, at *3 (S.D.N.Y. Feb. 10, 2004) ("direct[ing] someone else to

investigate Plaintiff's claims" constitutes personal involvement for Section 1983

purposes).  The reason for this is simple: DOCS commissioners and prison

superintendents receive large numbers of letters from inmates, and they "delegate

subordinates to handle them."  *Walker v. Pataro*, No. 99-4607, 2002 WL 664040, at *12

(S.D.N.Y. Apr. 23, 2002).  If courts found personal involvement every time a supervisor

forwarded a complaint to a subordinate, the requirement would lose all meaning.  *See*

*also Amaker v. Goord*, No. 98-3634, 2002 WL 523371, at *16 (S.D.N.Y. Mar. 29, 2002)

("[Commissioner] has testified that he receives thousands of letters each year as the

Commissioner and Chief Executive Officer of DOCS, and that his office generally

forwarded the letters to the appropriate personnel to handle the problems in question.").

Personal involvement requires more than that.

       How much more is uncertain.  Courts in the Second Circuit are divided on

whether a supervisor's "review and denial of a grievance constitutes personal

involvement in the underlying alleged unconstitutional act."  *Burton v. Lynch*, No. 08-

8791, 2009 WL 3286020, at *6s (S.D.N.Y. Oct. 13, 2009).  As Judge Sand noted in

*Burton*, some courts distinguish between the *degree* of response to an inmate's

grievance—for example, between summarily denying a grievance and denying it in a

detailed response that specifically addresses the plaintiff's allegations.  *See id.*; *see also*

*Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (RJH) (no personal

involvement for director of inmate grievance program who denied a grievance).  The

Court finds that distinction persuasive.  A supervisor's detailed, specific response to a

plaintiff's complaint suggests that the supervisor has considered the plaintiff's allegations

and evaluated possible responses.  *See Walker*, 2002 WL 664040, at *13 (personal

involvement will be found only when a supervisory official "receives and acts on a

prisoner's grievance (or substantively reviews and responds to some other form of inmate

complaint)").  A pro forma response suggests nothing like that.

Here, Mateo's complaint claims only that Fischer received his letters, forwarded

at least two of them to subordinates for investigation, and sent Mateo a response to the

effect that Mateo had provided insufficient information to support his allegations.

Without more, these allegations prove only the scantest awareness of Mateo's claims.

Indeed, Mateo's complaint openly admits that Fischer lacked full knowledge of his

claims: it suggests that "facility officials" never reported his allegations in full to Fischer.

On these pleadings, the Court must conclude that Fischer lacked personal

involvement; all claims against him are dismissed.

## IV.    Exhaustion

Defendants next argue that Mateo has failed to exhaust three of his claims, as he

must under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  (Defs.'

Mem. 6–10.)  First, Mateo says that he filed a grievance against unidentified Green

Haven officers for forcing his relatives to wait more than two hours to see him, but it was

never processed.  (Am. Compl. ¶ 9.)  Second, he says he tried to file a grievance after

Officer Perez called him "paranoid," but that he was never interviewed in connection

with that grievance.  (*Id.* ¶ 22.)  Mateo does not claim that he appealed directly to CORC

to resolve these grievances, although New York law permits such an appeal.  *See* 7 N.Y.

Comp. Codes R. & Regs. § 701.8(g) (2009).  Third, Mateo alleges that Officer Erns

forced him to wait "a long period of time" to use a toilet; he does not say that he ever

filed a grievance about the incident, (Am. Compl. ¶ 25), and the defendants have said

they have no record of such a grievance (Defs.' Mem. 9–10).

Whether Mateo exhausted these claims is beside the point, as none are claims

made against defendants named in this action.  Because Perez, Erns, and the unidentified

Green Haven officers who forced Mateo's relatives to wait are not defendants in this

case, the Court will disregard the allegations.  As defendants note in their reply brief,

Erns is a named defendant in another Mateo action before this Court and those claims

will be adjudicated in due course.[2]

### V.      Mateo's Remaining Claims

Defendants acknowledge that Mateo's remaining claims are exhausted. These

claims relate to Mateo's allegations that (1) Schmitt and other unnamed individuals

referred him to OMH, where he was diagnosed as paranoid, and (2) defendant Miller

---

[2] Mateo makes a separate allegation that Erns searched his property and confiscated various items as a retaliatory measure.  (*See* Pltf.'s Am. Compl. ¶ 25.)  The Court disregards that claim for the same reasons it disregards the others against Erns.

threatened Mateo on two occasions and filed a false misbehavior report about him.[3]

Construed liberally, the complaint raises Eighth Amendment and First Amendment

claims.  The Court now turns to these claims.

**A.      Eighth Amendment**

The Eighth Amendment proscribes the "unnecessary and wanton infliction of

pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation

omitted); *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).  It is well settled that this

proscription extends to "the treatment a prisoner receives in prison and the conditions

under which he is confined."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Thus prison

officials may not use excessive force against prisoners, and they must maintain "humane"

prison conditions.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  But not every injury is

a constitutional one; a plaintiff alleging an Eighth Amendment violation must show that it

is objectively "sufficiently serious," which means that the prisoner must not be denied

"the minimal civilized measure of life's necessities" and that conditions must be more

than just "restrictive and even harsh."  *Id.* at 833–34.  A plaintiff must also show that the

defendant acted with a "sufficiently culpable state of mind": "deliberate indifference" is

enough, but negligence is not.  *Id.* at 834.

Applying Eighth Amendment law's stringent standards to Mateo's allegations, the

Court finds that he has not made out an Eighth Amendment claim.  That officers called

---

[3] Mateo also alleges that his grievances were not processed, but this claim has two fatal flaws.  First, Mateo does not allege *who* failed to process his grievances.  Second and more fundamentally, failure to process a grievance does not rise to the level of a constitutional violation.  *See Hofelich v. Ercole*, No. 06-13697, 2010 WL 184453, at *7 (S.D.N.Y. Jan. 11, 2010) ("There is no constitutional right to an inmate grievance review process.").  Denial of due process requires the deprivation of a protected liberty interest, and none is implicated here.  *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.").

him "paranoid" and that they referred him for a mental health evaluation may be forms of

harassment, but they are not serious enough to implicate the Constitution. *See Boddie v.*

*Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("isolated episodes of harassment and

touching . . . do not involve a harm of federal constitutional proportions"); *Black v.*

*Cuomo*, No. 95-2678, 1996 WL 146507, at *1 (2d Cir. Apr. 1, 1996) (prison officials'

"verbal harassment, denial of haircuts, withholding of law library books for two days, late

delivery of food and denial of a pen . . . are burdensome and annoying, not 'cruel and

unusual'"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (claim that a prison

guard called plaintiff names "did not allege any appreciable injury"); *Hofelich v. Ercole*,

No. 06-13697, 2010 WL 184453, at *8 (S.D.N.Y. Jan. 11, 2010) ("Section 1983 was not

designed to rectify harassment or verbal abuse." (internal citations omitted)); *cf. Green v.*

*City of New York Dept. of Corrections*, No. 06-4978, 2008 WL 2485402, at *6–*7

(S.D.N.Y. June 19, 2008) (inmate whom officers falsely designated as gang-affiliated did

not show that he faced a substantial risk of serious harm from other inmates).  And even

if it is true that Miller falsely accused Mateo in a misbehavior report, that false accusation

is not cognizable under the Eighth Amendment. *See Boddie*, 105 F.3d at 862 ("a prison

inmate has no general constitutional right to be free from being falsely accused in a

misbehavior report").

Mateo's contention that Miller twice threatened him also fails to state an Eighth

Amendment claim.  In mid-November of 2007, Miller allegedly told Mateo that Mateo

"shouldn't have written him up, wait till he put his hands on [Mateo]."  (Am. Compl. ¶

20.)  As the complaint tells it, almost four months went by without incident; then, in early

March of 2008, Miller supposedly "entered [Mateo's] assigned cell and held his right

gloved fist to [Mateo's] face, threatened [him] by saying that one day he and [Mateo] will

party." (*Id.* ¶ 23.)  The complaint never alleges that Miller, or anyone else, *actually* used

force against him, or that he ever sustained a physical injury.[4]  By any measure, Miller's

isolated threats did not rise to the level of wanton and unnecessary infliction of pain.

*Accord Garcia v. Rodriguez*, No. 05-5915, 2007 WL 2456631, at \*2 (S.D.N.Y. Aug. 24,

2007) (statement that plaintiff would "get hurt," without more, could fairly be interpreted

as nothing more than "an idle threat").


**B.     First Amendment**

Mateo's last contention is that the defendants retaliated against him for filing

grievances and making complaints.  "Retaliation against a prisoner for pursuing a

grievance violates the right to petition government for the redress of grievances

guaranteed by the First and Fourteenth Amendments."  *Graham v. Henderson*, 89 F.3d

75, 80 (2d Cir. 1996); *see Colon*, 58 F.3d at 872 ("Prisoners, like non-prisoners, have a

right of access to the courts and to petition the government for the redress of grievances,

and prison officials may not retaliate against prisoners for the exercise of that right");

*Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) ("An act in retaliation for the exercise

of a constitutional right is actionable under [S]ection 1983 even if the act, when taken for

a different reason, would have been proper.").  But courts should still "approach prisoner

retaliation claims with skepticism and particular care, because virtually any adverse

action taken against a prisoner by a prison official—even those otherwise not rising to the

---

[4] Mateo's opposition to the defendants' motion to dismiss does make claims along these lines. (*See* Aff. in Opp. 4 (stating that, while Mateo was incarcerated at Green Haven, "hard core drugs were excessively used on me" and "I was physically tortured by correction security staffs").)  These allegations are extremely serious, but they do not appear in Mateo's complaint, and they are not lodged against any identified person, let alone one of the three defendants in this case.  As such, the Court has no choice but to disregard them here.

level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Burton*, 2009 WL 3286020, at *11 (internal quotation marks and citation omitted).

A First Amendment retaliation claim requires that the plaintiff show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). It is well settled that the filing of a prison grievance is a protected activity. *Id.* Thus Mateo satisfies the first prong of the test.

The second prong requires the defendant to have taken adverse action. In the prison context, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes*, 239 F.3d at 493; *see Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). The adverse action inquiry is a contextual one. *Davis*, 320 F.3d at 353. Courts should bear in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.*

Mateo alleges that Miller and Schmitt took adverse actions against him: Miller by (1) threatening him and (2) filing a false misbehavior report about him, and Schmitt by (3) reporting him to OMH. The Court finds that only the second allegation qualifies as an adverse action. Filing a false misbehavior report about Mateo—though not in itself a constitutional violation—would deter a similarly situated person of ordinary firmness

14

from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 384

(2d Cir. 2004) (filing a false misbehavior report was an adverse action for purposes of

retaliation analysis); *Boddie*, 105 F.3d at 862 (2d Cir. 1997) ("[A] prison inmate has no

general constitutional right to be free from being falsely accused in a misbehavior report .

. . . There must be more, such as retaliation against the prisoner for exercising a

constitutional right." (internal citations omitted)).

Mateo's other two allegations are different. First, he says that Miller verbally

threatened him. It is true that some verbal threats, even if not serious enough to implicate

the Eighth Amendment, can constitute an adverse action. *See Hofelich*, 2010 WL

184453, at *9 ("whether [verbal threats] constitute adverse action seems to depend on

their specificity and the context in which they are uttered"); *Lunney v. Brureton*, 04-2438,

2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007) (collecting cases); *Cf. Kerman v.*

*City of New York*, 261 F.3d 229, 242 (2d Cir. 2001) (officer's statement to plaintiff that

he "would teach [plaintiff] a lesson and give him something to sue for" stated a

retaliation claim). But not all do. The less direct and specific a threat, the less likely it

will deter an inmate from exercising his First Amendment rights. *Cf. Lunney*, 2007 WL

1544629, at *23 (statements like "if you don't stop writing grievances I'm going to break

your fuckin' neck" were direct and specific enough to be adverse actions). The opacity

of Miller's threats to Mateo—that Mateo should "wait till he put his hands on me," (Am.

Compl. ¶ 20), and that "one day he and I will party," (*id.* ¶ 23)—softens the deterrent

effect considerably. *See also Kemp v. LeClaire*, No. 03-0844, 2007 WL 776416, at *15

(W.D.N.Y. Mar. 12, 2007) (threats like "your day is coming," "you'll be sent to your

mother in a black box," and "you'll get your black ass kicked" not adverse actions);

*Bartley v. Collins*, 95-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance" not adverse action).  So does the fact that Miller evidently never followed through on these threats.  Accordingly, Mateo's retaliation claim premised on Miller's threats is dismissed for failure to allege an adverse action.

In the same way, Schmitt's retaliatory referral of Mateo to the Office of Mental Health does not implicate the First Amendment.  *Accord Abascal v. Jarkos*, No. 08-0789, 2009 WL 4893674, at *2 (2d Cir. Dec. 21, 2009) (plaintiff's claim that he was arbitrarily classified as mentally ill and transferred to a psychiatric center was not an adverse action because his complaint substantiated that classification, claiming plaintiff experienced "waking visions" and believed his "mind was being read" by others).  While Mateo's fears, as stated in his complaint and to Schmitt in an interview, do not lead inexorably to the conclusion that he suffers from paranoia, they could lead a reasonable person to believe a referral to OMH was justified.  Keeping in mind that inmates' retaliation claims should be viewed with some skepticism, the Court cannot find that Schmitt's referral was an adverse action.  The retaliation claim against Schmitt is dismissed.

The third prong of the retaliation test requires a causal connection between the protected speech and the adverse action.  Circumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity.  *Colon*, 58 F.3d at 872 ("temporal proximity between an inmate's lawsuit and disciplinary action may serve as

16

circumstantial evidence of retaliation"). Mateo's only claim that alleges an adverse

action—Miller's filing of a false misbehavior report—also sufficiently alleges causation.

Mateo says that Miller filed the report the day after Mateo filed a sexual harassment

grievance against Miller. (Am. Compl. ¶ 20.) That strikes this Court as closely

proximate in time, and the government does not argue otherwise. For these reasons,

Mateo's retaliation claim against Miller for filing a false misbehavior report will survive

dismissal.

## CONCLUSION

For the reasons given, the defendants' motion to dismiss is granted as to all of

Mateo's claims except his retaliation claim against Miller for filing a false misbehavior

report.

SO ORDERED.

Dated: New York, New York
      February 5 , 2010

                                          Richard J. Holwell
                                      United States District Judge