UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CESAR MATEO,

                            Plaintiff,

         -against-

BRIAN FISCHER, et al.,

                  Defendants.

08 Civ. 7779 (RJH)

**MEMORANDUM OPINION**
**AND ORDER**

Richard J. Holwell, District Judge:

       This is one of several actions that plaintiff *pro se* Cesar Mateo, currently incarcerated at Coxsackie Correctional Facility, has filed challenging the conditions of his confinement in New York's prisons. Many have been dismissed without for failure to exhaust administrative remedies. *See Mateo v. Corebine*, No. 09 Civ. 4811, 2010 WL 3629515 (S.D.N.Y. Sept. 17, 2010); *Mateo v. Ercole*, No. 08 Civ. 10450, 2010 WL 3629520 (S.D.N.Y. Sept. 17, 2010); *Mateo v. O'Connor*, No. 08 Civ. 11053, 2010 WL 3199690 (S.D.N.Y. Aug. 12, 2010); *Mateo v. Alexander*, No. 08 Civ. 8797, 2010 WL 431718 (S.D.N.Y. Feb. 9, 2010). Of these actions, some have been re-filed and defendants have again moved to dismiss, *see Mateo v. O'Connor*, No. 10 Civ. 8426, ECF No. 16; *Mateo v. Alexander*, No. 10 Civ. 8427, ECF No. 8, some are pending a decision on appeal, *see Mateo v. Corebine*, No. 09 Civ. 4811, ECF No. 41; *Mateo v. Ercole*, No. 08 Civ. 10450, ECF No. 33, and this action has spawned another arising out of correctional officers' conduct regarding Mateo's deposition, *Mateo v. Heath*, No. 11 Civ. 636. In this action, on defendants' motion to dismiss, the Court previously dismissed all of Mateo's claims except

his First Amendment retaliation claim against defendant Michael Miller, a correction officer, for filing a false misbehavior report.  *Mateo v. Fischer*, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010). Now before the Court is Miller's motion for summary judgment.  For the reasons that follow, that motion is DENIED.

## BACKGROUND

Mateo claims that Miller filed a false and retaliatory misbehavior report because of his grievance alleging that Miller conducted an inappropriate pat frisk.

By letter dated November 14, 2007, Mateo complained to the Inmate Grievance Resolution Committee ("IGRC") at Green Haven Correctional Facility ("Green Haven"), where he was then incarcerated, that an unidentified officer "slid his hands caressing my body instead of performing a professional standard pat frisk."  (Wen Decl. Ex. A at unnumbered pg. 8.)  The Inmate Grievance Program Supervisor received that letter on November 15, 2007, and filed a Report of Sexual Assault.  (*Id.* at 11.)  That day, non-party Sgt. Robert Clerc investigated Mateo's grievance, concluding that it lacked merit.  (*Id.* at 14.)  His investigation included an interview of Mateo, just prior to which defendant Miller allegedly pat-frisked Mateo in a manner similar to the November 10, 2007 pat frisk of which Mateo complained.  (*Id.*)

Mateo testified that he sent another letter to the IGRC on November 15, 2007, complaining of Miller's pat frisk, although this letter does not appear in the record.  (Wen Decl. Ex. K ("Mateo Dep.") at 37-40; *see also* Def.'s Rule 56.1 Stmt. ¶ 17 n.2.)  In any event, Miller was eventually added to Mateo's November 14, 2007 grievance.  (*See* Miller Decl. ¶ 10.)  Mateo also wrote two letters dated November 16, 2007, to the IGRC.  The first complained that Miller, after taking Mateo's request for lunch, said Mateo "should not have written him up," and "wait till I put my hands on you."  (Wen Decl. Ex. A at 9.)  The second complained more generally of

Green Haven's "homosexualizing frisk" procedures which, according to Mateo, correction officers used "to obtain sexual gratification during performance of slide hands-caressing frisk on me." (*Id.* at 10.) Those letters, along with the November 14, 2007 letter, were included in a single grievance file; the grievance was denied by Green Haven's superintendent on December 17, 2007, and the Central Office Review Committee ("CORC") denied Mateo's appeal of that grievance on January 30, 2008. (*Id.* at 1, 4.)

On November 16, 2007, Miller filed an Inmate Misbehavior Report ("IMR") charging Mateo with soliciting a sexual act and lewd conduct. (Wen Decl. Ex. B at 13; Ex. E.) The IMR stated that at approximately 11:10 a.m. on that date, Mateo asked Miller if he "love[d] to touch him," told Miller that he knew that Miller wanted to commit certain sexual acts with him, and did so while "excessively rubbing his groin area." (Wen Decl. Ex. E.) Miller further stated in the IMR that he contacted his area supervisor and submitted a referral for Mateo to be seen by the Psychiatric Satellite Unit ("PSU") of the New York State Office of Mental Health ("OMH"). (*Id.*) He was screened that day at the Central New York Psychiatric Center, where he reported that he believed that correction officers were "purposely rubbing their hands on him in a sexual manner," that this practice was "harassment," and that he "was bisexual in the past and is 'try [sic] to change to heterosexual.'" (Wen Decl. Ex. J at D-Mateo (Fischer) 000106.) On November 16, 2007, Miller also filled out a report responding to his being added to Mateo's November 14 grievance, which denied sexually harassing Mateo or deriving sexual gratification from the pat frisk. (Wen Decl. Ex. A at 15.)

On November 19, 2007, a Tier III disciplinary hearing was held to address the IMR, at which hearing officer Lt. Tokarz presided. (Wen Decl. Ex. G at D-Mateo (Fischer) 046.) At the hearing, Mateo pled not guilty, indicated his desire to present a letter he wrote to the

superintendent on November 16, 2007, and submitted his theory that the IMR was fabricated in retaliation for his grievance against Miller.  (*Id.* at 048, 050, 051.)  Mateo reiterated his objection to the pat-frisk procedure, but Tokarz told him that the sliding-hands procedure was "normal." (*Id.* at 051-53.)  Mateo also expressed his belief that the IMR was false because (1) if he "[r]ubbed [his] groin sexually . . . it makes [him] bleed," and he would not risk such a thing; and (2) he did not know the sexual connotation of the word "blow," which was used in the IMR.  (*Id.* at 057-60.)  The hearing continued on November 28, 2007, where Mateo told Tokarz that he did not have the letter he wanted to present on November 16 because it was in the hands of the inmate grievance program, that he did not want to participate in any prison programs, and refused to be present for the testimony of Miller.  (Wen Decl. Ex. H at D-Mateo (Fischer) 069-76.)  Miller then testified, outside Mateo's presence, that the IMR was not retaliatory, and upon Miller's testimony and written report, Tokarz found Mateo guilty of both charges in the IMR.[1] (*Id.* at 078-80; Wen Decl. Ex. B. at 9-10.)

On or after November 29, 2007, Mateo wrote a letter to the IGRC, complaining that Miller had issued a retaliatory and fabricated IMR and that other inmates had approached Mateo saying that they had learned that he was a sex offender even though his conviction was for armed robbery.[2]  (Wen Decl. Ex. B at unnumbered pg. 8.)  On November 29, 2007, Mateo wrote another letter to the IGRC stating that he "was afraid to continue" being present at the Tier III disciplinary hearing when Miller testified and requesting that all interactions between him and prison staff be taped.  (*Id.* at 7.)  The two letters were consolidated into a single grievance file, which was investigated by non-party Sgt. Murphy.  (*Id.* at 14.)  The superintendent denied his

---

[1] That determination was later reversed because "the circumstances surrounding the incident required the hearing officer to obtain a mental health assessment on the inmate."  (Wen Decl. Ex. I.)
[2] The letter is dated November 28, 2007, but states that Mateo was "given a disposition" of the IMR on November 29, 2007, so presumably the letter was written on or after that date.

grievance on December 11, 2007, and CORC denied his appeal on January 16, 2008. (*Id.* at 1, 5.)

This action followed on July 15, 2008. After defendants' motion to dismiss, only a retaliation claim against Miller remained, and Miller has now moved for summary judgment on the last remaining claim.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party must demonstrate that no genuine issue exists as to any material fact. *Celotex*, 477 U.S. at 323-25. As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (rejecting a construction of Rule 56(c) that would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

"The Court recognizes that it must extend extra consideration to *pro se* plaintiffs" and that "*pro se* parties are to be given special latitude on summary judgment motions."  *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (internal quotation marks omitted). "Nevertheless, proceeding *pro se* does not relieve the non-movant from the usual requirements of summary judgment, and Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses."  *United States v. Pugh*, 717 F. Supp. 2d 271, 284 (E.D.N.Y. 2010) (internal citation omitted).

## II. Retaliation

Mateo's sole remaining claim is a retaliation claim against Miller.  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that [sic] '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004)).  If Mateo satisfies his burden, Miller can escape liability only by proving that he "would have taken the same adverse action in the absence of the protected [conduct]."  *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (quoting *Heil v. Santoro*,

6

147 F.3d 103, 110 (2d Cir. 1998)).  The Court is also mindful of the Second Circuit's direction

that "because we recognize both the near inevitability of decisions and actions by prison officials

to which prisoners will take exception and the ease with which claims of retaliation may be

fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

      As the Court previously found, the filing of a grievance is a protected activity, and filing

a false misbehavior report satisfies the test for an adverse action.  682 F. Supp. 2d at 433-34.

Miller argues, however, that Mateo cannot prove the causation prong of his case.  For retaliation

claims, "where . . . circumstantial evidence of a retaliatory motive is sufficiently compelling,

direct evidence is not invariably required."  *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003).

Rather, "circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact

precluding the grant of summary judgment."  *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002)

(rejecting argument that plaintiff "has failed to meet his evidentiary burden because he has failed

to submit direct evidence that the report was filed as a retaliatory measure").  With respect to the

causation prong, "[c]ircumstantial facts indicating a retaliatory motive include '(i) the temporal

proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior

good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the

defendant concerning his motivation.'"  *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y.

2009) (quoting *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732-33 (S.D.N.Y. 2002)).

      Here, the IMR was filed on November 16, 2007, the same day that Mateo filed his

grievance against Miller.  "A plaintiff can establish a causal connection that suggests retaliation

by showing that protected activity was close in time to the adverse action," *Espinal*, 558 F.3d at

129, although "[i]n many circumstances . . . this alone is insufficient to avoid summary

judgment," *Webster v. Fischer*, 694 F. Supp. 2d 163, 183 (N.D.N.Y. 2010), and "for such a showing to 'provide an *independent* basis for an inference of causation, temporal proximity must be significantly greater' than a case with corroborating evidence."  *Neron v. Cossette*, 419 F. App'x 123, 124 (2d Cir. 2011) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003)) (emphasis in *Neron*).   Miller argues, however, that the temporal proximity is irrelevant because there is an "absence of proof that Miller knew about a grievance against Miller before the IMR was issued."  (Def.'s Mem. at 17.)  In support, Miller offers his declaration, which says that "[a]t the time [he] issued the IMR at about 11:10 a.m. on November 16, 2007," he had no knowledge of "any grievance by Mr. Mateo dated or filed on November 15 or 16, 2007," and "[t]o the best of [his] knowledge . . . was asked to write the memo that day responding to Mr. Mateo's November 14, 2007 grievance" only "after [he] issued the IMR."  (Miller Decl. ¶¶ 24, 25.)  But Mateo testified in his deposition that Miller approached his cell at or around the time of the IMR and "said that I shouldn't have written him the grievance" and "issued . . . threats." (Mateo Dep. at 52:25-54:5, 66:7-67:6; *see also* Wen Decl. Ex. A at 9 (complaining in the grievance that Miller told Mateo "wait till I put my hands on you").)  And Mateo also testified that after he returned from his referral to the PSU, Miller "called [his] attention and blew [him] a kiss."  (*Id.* at 61:7-62:6.)  Drawing all inferences in Mateo's favor, as this Court must, the Court concludes that a reasonable jury could find that Miller was aware of at least one of Mateo's grievances at the time he issued the IMR.

Miller also argues that Mateo "can demonstrate no non-speculative evidence of causation other than temporal proximity, which by itself, is insufficient."  (Def.'s Reply at 5.)  As noted, however, the Second Circuit has indicated that temporal proximity can be sufficient, *Espinal*, 558 F.3d at 129; *compare Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (finding

that where the plaintiff's "sole evidence of retaliation" was three days of temporal proximity "such evidence, without more, is insufficient to survive summary judgment"), and here, Mateo relies not only on temporal proximity, but also on Miller's statement to Mateo that he should not have filed a grievance against him and associated threats.  (*See, e.g.*, Wen Decl. Ex. A at 9; Mateo Dep. at 52-53, 66.)

Miller further argues that "inmate grievances are common occurrences in prison, and a grievance filed against an officer cannot be regarded as likely to give rise to a retaliatory motive to issue a false IMR, without more, in that officer."  (Def.'s Mem. at 18.)  But Miller cites no authority for this proposition, and retaliation claims based on inmate grievances have survived summary judgment.  *See, e.g.*, *Gill*, 389 F.3d at 384.  Miller also contends that "all the remaining factors weigh heavily against a finding for Plaintiff."  (Def.'s Mem. at 18.)  But the "factors" to which he refers, such as Mateo's disciplinary record, are not part of a factor-based test, but merely examples of "[c]ircumstantial facts indicating a retaliatory motive."  *Burton*, 664 F. Supp. 2d at 367.

Finally, Miller argues that even if Mateo is "able to meet all three retaliation elements . . . he can show that he would have issued the IMR even absent the protected conduct."  (Def.'s Mem. at 19.)  But for this argument, Miller relies solely on paragraphs from his declaration that say, in essence, that the IMR was not false, a proposition disputed by Mateo's testimony. (*Compare* Miller Decl. ¶¶ 22, 23 ("I issued Mr. Mateo the attached IMR solely because he had violated the prison rules regarding soliciting sexual acts and lewd conduct, and not for any retaliatory purpose.") *with* Mateo Dep. at 51:8-25 ("[I]t never happened.  It doesn't reflect reality at all.").)  Summary judgment on this ground, therefore, is inappropriate.

### III. Qualified Immunity

Miller also argues that he is entitled to summary judgment based on the doctrine of qualified immunity.  "Qualified immunity shields public officials from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Southerland v. City of New York*, --- F.3d ----, 2011 WL 2279186, at *8 (2d Cir. June 10, 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."  *Id.* (quoting *Holcomb v. Lykens*, 337 F.3d 217, 220 (2d Cir. 2003)).

But Miller's qualified-immunity argument is the same as his argument on the substance of the retaliation claim and fails for the same reasons.  For example, he argues that Mateo "cannot demonstrate any First Amendment violation for his retaliation claim" because "even if Plaintiff can show all three retaliation elements, Defendant . . . can show that he would have issued the IMR even absent the protected conduct."  (Def.'s Mem. at 22.)  But as discussed above, issues of fact remain with respect to whether Mateo can demonstrate a First Amendment violation.  Miller also argues that "[a]lthough the right not to be retaliated against for filing a grievance is clearly established, it may not be clearly established under the circumstances here, where the grievance in question was admittedly placed in the grievance box the same morning the allegedly-retaliatory IMR was issued" since "there is no evidence that Defendant knew of that grievance."  (*Id.*)  But again, as discussed above, it is a disputed issue of fact whether Miller knew of the grievance prior to issuing the IMR, as evidenced by Mateo's deposition testimony.  Accordingly, Miller's qualified-immunity argument fails as well.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment **[55, 60]** is

DENIED.  Mateo should make in writing any request for counsel within thirty days of this order.

SO ORDERED.

Dated: New York, New York
      August 11, 2011

                                        Richard J. Holwell
                                  United States District Judge